IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **KHALID AL-HUMAID**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:09-CV-982-L** |
| | § | |
| **DAVID L. ROARK,** Director, Texas Service | § | |
| Center; **JOHN F. GRISSOM,** Acting Chief, | § | |
| Administrative Appeals Office; **MICHAEL** | § | |
| **AYTES,** Acting Director, Citizenship and | § | |
| Immigration Services; **UNITED STATES** | § | |
| **CITIZENSHIP AND IMMIGRATION** | § | |
| **SERVICES**; **JANET A. NAPOLITANO,** | § | |
| Secretary, Department of Homeland Security; | § | |
| and **ERIC H. HOLDER**, Attorney General, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are (1) Plaintiff's Motion for Summary Judgment, filed August 10, 2009;

and (2) Defendants' Cross-Motion for Summary Judgment, filed August 31, 2009.   After

consideration of the motions, responses, replies, briefs, appendices, record, and applicable law, the

court **grants** Defendants' Cross-Motion for Summary Judgment and **denies** Plaintiff's Motion for

Summary Judgment.

## I.      Factual and Procedural Background

Plaintiff Khalid Al-Humaid ("Al-Humaid" or "Plaintiff") is a native and citizen of Saudi

Arabia who currently resides there.  He filed his original complaint for declaratory relief in this court

on May 27, 2009, against Defendants David L. Roark, John F. Grissom, Michael Aytes, United

States Citizenship and Immigration Services, Janet A. Napolitano, and Eric H. Holder (collectively,

"Defendants").  Al-Humaid's claim presents a federal question under 5 U.S.C. §§ 701-706 and § 1331, which grant this court the power to review an agency action where a plaintiff has allegedly suffered a "legal wrong" or has been "adversely affected or aggrieved" by that action.

Al-Humaid entered the United States in June 2006 as a B-2 visitor.  On August 10, 2006, he lawfully established a Texas cleaning services business, HAK Company, Inc. ("HAK Company"), and made himself sole director and shareholder.  On February 1, 2007, Al-Humaid filed an I-526 Immigrant Petition, a form used by an alien entrepreneur to acquire status as a United States immigrant pursuant to Section 203(b)(5) of the Immigration and Nationality Act.  His petition indicated that his capital investment in HAK Company totaled $1,000,000.  On March 27, 2007, the United States Citizenship and Immigration Services ("USCIS") issued a Request for Additional Evidence ("RFE"), requesting Al-Humaid to submit documentary evidence showing that the capital used in his investment was obtained through lawful means; USCIS received Al-Humaid's response on May 3, 2007.

Al-Humaid was forced to leave the United States and return to Saudi Arabia on June 10, 2007, when his B-2 visitor status expired.  On June 19, 2007, USCIS issued another RFE requesting the production of further evidence to show that Plaintiff's money was being actively invested in HAK Company, not just sitting in a corporate account.  USCIS received Al-Humaid's response on July 27, 2007, and subsequently denied his I-526 Immigrant Petition one month later, on August 27, for failure to meet the burden of proof in the proceedings.

Al-Humaid appealed his petition's denial to USCIS's Administrative Appeals Office ("AAO") on September 25, 2007.  AAO issued a Notice of Intent to Deny and another RFE on February 26, 2009, expressing several concerns, including concern that over 80% of Plaintiff's

$1,000,000 capital "investment" was sitting idly in a corporate account, not being placed "at risk" for the purpose of job creation. After reviewing Al-Humaid's response, AAO upheld the prior decision of USCIS and denied Plaintiff's I-526 Immigrant Petition, determining that Al-Humaid had not demonstrated that he had created or would create the necessary jobs and that his comprehensive business plan, stating that HAK Company would employ forty-two workers, was not credible.

Rather than filing a motion to reconsider AAO's decision, Al-Humaid seeks judicial review in this court pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 706 *et. seq.* AAO's denial of Plaintiff's I-526 Immigrant Petition was based on Al-Humaid's failure to demonstrate that: (1) he has invested or is actively in the process of investing the required amount of capital; and (2) his commercial enterprise will create at least ten full-time positions for qualifying employees. Al-Humaid has moved for summary judgment against Defendants, alleging that USCIS and AAO did not have a rational basis for denying his I-526 Immigrant Petition, that the rulings were contrary to USCIS's own regulations, and that the decisions were arbitrary and capricious. Defendants have responded with a cross-motion for summary judgment, contending that they are entitled to summary judgment because the applicable law and evidence presented support the USCIS and AAO decisions, and that those decisions were not arbitrary and capricious.

## II.  Legal Standard – Motion for Summary Judgment

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact

is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary

judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.   Analysis

Al-Humaid asserts at length in his briefing that the decisions of USCIS and AAO are not entitled to any judicial deference by the court, citing United States Supreme Court case law in support. Defendants do not rebut Plaintiff's assertion; instead, they argue the position that USCIS's and AAO's evaluations of the evidence submitted, in light of the applicable law and regulations, led to rational decisions that were not arbitrary and capricious. The court accordingly will conduct its own analysis of the evidence presented and will weigh the rationality of the USCIS and AAO decisions in light of the applicable law and regulations.

Defendants, in support of the USCIS and AAO decisions, principally contend that Al-Humaid has failed to demonstrate that (1) he has invested or is actively in the process of investing the required amount of capital; and (2) his company will create the required ten full-time job positions. The court will consider both issues in turn.

### A.   Capital at Risk

Al-Humaid's I-526 Immigrant Petition is based on an investment in a business that is not located in a target employment area for which the required amount of capital invested has been adjusted downward. Thus, the required amount of capital in this case is $1,000,000. The regulations

require an I-526 petitioner to present evidence showing that this required capital investment is placed "at risk," specifically providing as follows:

> To show that the petitioner has invested or is actively in the process of investing the required amount of capital, the petition must be accompanied by evidence that the petitioner has placed the required amount of capital at risk for the purpose of generating a return on the capital placed at risk. Evidence of mere intent to invest, or of prospective investment arrangements entailing no present commitment, will not suffice to show that the petitioner is actively in the process of investing. The alien must show actual commitment of the required amount of capital.

8 C.F.R. § 204.6(j)(2).

The administrative record in this case establishes that Al-Humaid contributed the required $1,000,000 in capital to HAK Company.  Of that $1,000,000 amount, $800,000 was deposited into a certificate of deposit account, and $140,000 was deposited into a money market account.  Al-Humaid states that this was done because "a cleaning services business starting out does not require a full $1,000,000 to begin operations," and "once the company grows and expands, it will need additional capital to buy more equipment, pay for more employees, etc., and at that time the reserve account may not be necessary."  Pl.'s Mot. Summ. J. Br. at 17.  In other words, Al-Humaid makes clear that the bulk of his $1,000,000 capital contribution is being used as a reserve account for HAK Company to cover the costs of any needed corporate expenses or liabilities that may arise in a future outpour of company growth and expansion.

Defendants respond that a passive investment reserve account does not meet the "at risk" requirement of the regulations.  By Defendants' accounting, only $167,062 of Al-Humaid's original $1,000,000 capital contribution has been used to pay for expenses incurred by HAK Company

between January 2007 and July 2007.[*]  This figure drives Defendants' contention that close to $800,000 of Al-Humaid's original capital contribution constitutes a passive investment, making those funds unavailable for the purpose of job creation, and failing to satisfy the "at risk" requirement.

The USCIS and AAO decisions appear primarily concerned with preserving the congressional purpose of an I-526 Immigrant Petition, which involves the creation of full-time jobs. Defendants contend that approximately $800,000 of Al-Humaid's original capital contribution is sitting idle, kept in a passive reserve account by HAK Company, and losing sight of this congressional purpose.  Al-Humaid argues that it is irrelevant if his money is kept in a company reserve account because the regulations specifically contemplate a showing of bank statements to establish that a capital investment is "at risk."  *See* 8 C.F.R. § 204.6(j)(2)(i).  Al-Humaid further argues that there is no requirement that *all* of the capital investment be used, so long as he has shown a "meaningful concrete action" towards running the business.  *See Matter of Ho*, 22 I. & N. Dec. 206, 210 (B.I.A. 1998).  He contends that paying $167,062 of HAK Company expenditures from the reserve account constitutes such a "meaningful concrete action."  The court finds Plaintiff's argument unpersuasive.

The court's principal concern arises from a provision of the HAK Company bylaws, given that Al-Humaid is the sole director and shareholder of HAK Company. A.R. at 40. Article 8.03 of the bylaws provides, *inter alia*, that "the Directors may modify or abolish any such reserve in the manner in which it was created."  *Id.* at 36 ¶ 8.03.  Al-Humaid, who created HAK Company's reserve account through his investment funds, could abolish that account at any time and have those

---

[*]Plaintiff's accounting totals those expenses at $250,000.

**Memorandum Opinion and Order – Page 7**

funds returned to him under his powers as sole director. He has not irrevocably committed those funds to the company's expansion or to future company capital expenditures. Moreover, his business plan does not anticipate such costs. *See id.* at 53-55. Al-Humaid enjoys absolute discretion to decide whether HAK Company returns his investment funds back to him. Accordingly, the court determines that he cannot meet the "at risk" requirement by merely depositing such funds into a corporate account, and further determines that the USCIS and AAO decisions on this matter were consistent with the applicable law. *See Matter of Ho*, 221 I. & N. Dec. at 209 (concluding that the "at risk" requirement is not met when the petitioner exercises sole control over whether the company returns his investment funds).

The driving rationale behind such a ruling is sound; a petitioner who places his money fully at risk with no expectation of, or control over, reimbursement has a much greater incentive to work towards the enterprise's success and advance the congressional purpose of job creation. To effect this purpose, the regulations make clear that a petitioner "must show *actual commitment* of the *required amount* of capital." 8 C.F.R. § 204.6(j)(2) (emphasis added). The administrative record makes clear that the required amount of capital in this case is $1,000,000, and that a serious level of doubt has been raised as to the actual commitment of approximately $800,000 of that amount. Merely expecting future company growth, as Plaintiff does, and assuming that a reserve account will be necessary to handle such growth when it occurs instead of detailing an investment plan to actively precipitate such growth falls well short of the regulatory standard. For the reasons herein stated, the court determines that the USCIS and AAO decisions regarding capital at risk were not arbitrary and capricious and did not constitute an abuse of discretion. Accordingly, there is no genuine issue of material fact, and Defendants are entitled to judgment as a matter of law.

**Memorandum Opinion and Order – Page 8**

**B.      Employment Creation**

The second issue of employment creation serves as an alternative basis for granting summary judgment for Defendants; the court now addresses this issue.  The regulations require a petitioner to show that his commercial enterprise will create at least ten full-time positions for qualifying employees.  8 C.F.R. § 204.6(j).  The AAO decision determined that Al-Humaid could not establish this requirement because he lacked a credible business plan, noting that HAK Company had created no more than five consistently full-time positions after two years of operation.  Al-Humaid's business plan for HAK Company, however, projected the creation of forty-two employee positions; his personal affidavit specified that over forty of the new positions would be full-time.  A.R. 17.

Al-Humaid argues that AAO could not consider the company operations of HAK Company over the two-year period because the only relevant concern is whether the business plan was reasonable and in line with the appropriate regulations when it was submitted.  He further contends that his having been outside of the United States for the past two years has had an adverse effect on HAK Company's operations, as he has been unable to effectively manage it from overseas.  He finally contends that his I-526 Immigrant Petition should be granted because his conditional residence period could be revoked after two years if he has not complied with the legal requirements at that time (at the Form I-829 stage).  The court disagrees with these arguments.

First, even if AAO improperly considered HAK Company's operations over the past two years in rendering its decision, and even if being overseas adversely affected Plaintiff's ability to manage the company during that time period, such contentions are moot because of Plaintiff's failure to place his required amount of investment capital "at risk," in keeping with the regulations, discussed above.  Second, whether Plaintiff should have been granted a conditional two-year

**Memorandum Opinion and Order – Page 9**

residency in the United States to properly effect his business plan, thereby deferring adjudication until the Form I-829 stage, Defendants have made clear that USCIS has an interest in making sure that the business plan, if followed, would be qualifying.  At the Form I-829 stage, whether the planned activities in the business plan are qualifying cannot be adjudicated because such considerations are made at the Form I-526 stage.  *See Chang v. United States*, 327 F.3d 911, 927 (9th Cir. 2003).

Moreover, in light of Plaintiff's failure to properly place his investment funds "at risk," the court cannot say that AAO's decision regarding the business plan was arbitrary and capricious.  As discussed above, Al-Humaid projects that his company will encounter growth and expansion in the future, but his business plan does not set forth, nor does it anticipate, such costs insofar as precipitating the projected growth and expansion.  Without a more detailed business plan outlining a concrete, active commitment of the total amount of investment funds, the court determines that AAO did not abuse its discretion in determining that the plan was not credible.  Accordingly, no genuine issue of material fact exists with respect to the matter of employment creation, and Defendants are entitled to judgment as a matter of law.

## IV.  Conclusion

For the reasons stated herein, the court determines that no genuine issue of material fact exists with respect to whether the USCIS and AAO decisions were contrary to applicable law, arbitrary and capricious, or an abuse of discretion.  Defendants are therefore entitled to judgment as a matter of law, and the court accordingly **grants** Defendants' Cross-Motion for Summary Judgment.

Plaintiff's Motion for Summary Judgment does not establish that he is entitled to judgment as a matter of law with respect to whether the USCIS and AAO decisions were contrary to applicable law, arbitrary and capricious, or an abuse of discretion.  Moreover, the court has granted Defendants' Cross-Motion for Summary Judgment, and granting Plaintiff's Motion for Summary Judgment would be legally inconsistent with the court's ruling on Defendants' motion.  Accordingly, Plaintiff's Motion for Summary Judgment is **denied**, and Plaintiff's request for declaratory relief is **dismissed with prejudice**.  A final judgment will issue by separate document as required by Rule 58 of the Federal Rules of Civil Procedure.

**It is so ordered** this 26th day of January, 2010.

Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order – Page 11**